1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

VU LOC NGUYEN,

               Petitioner,

    v.

LAURA HERMOSILLO, *et al*.,

               Respondents.

CASE NO. 2:26-cv-00335-GJL

ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

10
11
12
13
14
15
16
17
18
19
20

      Petitioner Vu Loc Nguyen, a native and citizen of Vietnam, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On January 28, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from immigration detention and injunctive relief imposing limitations on the government's ability to remove him to a country other than Vietnam (*i.e.* "third-country removal"). *Id.*

21
22
23
24

      Respondents to the Petition include Laura Hermosillo (Acting Field Office Director for ICE's Seattle Field Office), Bruce Scott (Warden of the NWIPC), Kristi Noem (Secretary of the U.S. Department of Homeland Security ("DHS")), and Pamela Bondi (U.S. Attorney General)

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 1

1  (collectively "Respondents"). The Petition has been fully briefed. Dkts. 1, 5, 8. The parties have

2  consented to proceed in this matter before a United States Magistrate Judge. Dkt. 4.

3      Having considered the parties' submissions, the balance of the record, and the governing

4  law, the Court **GRANTS** the Petition **IN PART** and **ORDERS** Petitioner's immediate release

5  and permanent injunctive relief as set forth in the conclusion below.

6  ## I.      FACTUAL BACKGROUND

7      Petitioner Vu Loc Nguyen is a native and citizen of Vietnam who entered the United

8  States without lawful status on or about January 19, 2025. Dkt. 1 at ⁋ 1; Dkt. 6 at ⁋ 4. On January

9  20, 2025, Petitioner was apprehended by U.S. Customs and Border Protection, placed in

10 detention, and processed for expedited removal pursuant to § 235(b)(1) of the Immigration and

11 Nationality Act ("INA"). Dkt. 1 at ⁋ 14; Dkt. 6 at ⁋ 5. Upon apprehension, Petitioner expressed a

12 fear of return to Vietnam and requested asylum. Dkt. 1 at ⁋ 15.

13     On February 2, 2025, Petitioner was transferred to the NWIPC for continued detention

14 throughout his removal proceedings. Dkt. 6 at ⁋ 6. On April 18, 2025, Petitioner participated in a

15 credible fear interview with U.S. Citizenship and Immigration Services ("USCIS"). Dkt. 6 at ⁋ 7.

16 USCIS determined that Petitioner did not establish a credible fear of persecution or torture. *Id*.

17     On May 12, 2025, Petitioner was served a Notice to Appear charging him as removable

18 under Section 212(a)(7)(A)(i)(I) of the INA. Dkt. 6 at ⁋ 8; Dkt. 7-1. On June 1 and July 18, 2025,

19 Petitioner sought relief from removal by filing applications for asylum, withholding of removal,

20 and protection under the Convention Against Torture. Dkt. 6 at ⁋ 9. An Immigration Judge ("IJ")

21 denied all requested relief and, on July 28, 2025, the IJ issued a final order of removal to

22 Vietnam. Dkt. 1 at ⁋⁋ 1, 15; Dkt. 6 at ⁋ 10; Dkt. 7-3.

23     It is undisputed that, on December 1, 2025, immigration officials submitted a request for

24 travel documents for Petitioner to the Consul General of Vietnam. Dkt. 7-4. That request, which

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 2

is included in the evidentiary record, reflects that a copy of Petitioner's passport, a family

information sheet, a self-declaration form, biometric information, and other documentation were

submitted as enclosures to the request. *Id.* No response from the Vietnamese Consulate is

reflected in the evidentiary record of this case. *Id.*

Petitioner remains in detention at NWIPC pending removal pursuant to 8 U.S.C. § 1231.

## II.    PROCEDURAL BACKGROUND

These federal habeas proceedings were initiated on January 28, 2026. Dkt. 1. As relief,

Petitioner requests, among other things, immediate release from confinement and an injunction

placing limitations on the government's ability to remove him to a country other than Vietnam.

*Id.* at 11.

Respondents filed their Return on February 12, 2026, arguing the Petition and all requests

for relief therein should be denied. Dkt. 5. Respondents also submit evidence in support of their

arguments in the Return. Dkts. 6, 7, 7-1–7-5.

On February 17, 2026, Petitioner filed a Traverse in support of his Petition and evidence

rebutting the arguments raised in the Return. Dkts. 8, 8-1–8-4.

Upon review of the parties' submissions and the governing law, the Court **GRANTS** the

Petition **IN PART** and **ORDERS** Petitioner's immediate release and injunctive relief outlined in

the conclusion below.

## III.    DISCUSSION

Petitioner asserts the following five Grounds for relief in the Petition: (1) Petitioner's

removal is not likely to occur in the reasonably foreseeable future, making his detention of

indefinite duration in violation of due process as set forth in *Zadvydas v. Davis*, 533 U.S. 678,

690 (2001) ("Ground One"); (2) Petitioner's prolonged detention without a bond order is in

violation of due process as set forth in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117 (W.D.

1  Wash. 2019) ("Ground Two"); (3) Petitioner's third-country removal, if conducted without

2  notice and an opportunity to be heard, violates federal immigration statutes including the INA

3  and the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), which codifies the

4  protections enshrined in the Convention Against Torture ("CAT") ("Ground Three") and (4) the

5  Due Process Clause ("Ground Four"); and (5) Petitioner's removal to an undesignated third

6  country where he is likely to be imprisoned or harmed would violate constitutional guarantees

7  against unlawful punishment ("Ground Five"). Dkt. 1 at 9–10.

8        Respondents argue the Petition should be denied on all Grounds. Dkt. 5. In particular,

9  Respondents argue Ground One should be denied because Petitioner's removal is "significantly

10  likely in the reasonably foreseeable future" and any delays in effectuating Petitioner's removal

11  resulted from his own alleged failure to assist immigration officers. Dkt. 5 at 6–8. With respect

12  to Ground Two, Respondents argue that this case, which involves detention occurring after a

13  final order of removal has been issued, is distinguishable from the line of authority relied upon

14  by Petitioner, which involves prolonged detention occurring before the issuance of a final order

15  of removal. *Id.* at 8. As for Grounds Three through Five, Respondents argue that any claim for

16  relief related to third-country removal is speculative and not ripe for adjudication. *Id.* at 8–9.

17        As discussed in greater detail below, the Court finds that Petitioner's detention is of

18  indefinite duration in violation of due process as alleged in Ground One. However, because the

19  appropriate remedy for Ground One is immediate release from confinement, the Court declines

20  to reach Petitioner's prolonged detention claim in Ground Two. With respect to Petitioner's

21  third-country removal claims in Grounds Three and Four, the Court concludes that Petitioner is

22  entitled to notice and the right to respond in reopened removal proceedings before he may be

23  removed to a country other than Vietnam. Finally, on Ground Five, the Court concludes that

24

Petitioner is also entitled to injunctive relief prohibiting his removal to an undesignated third country where he is likely to be imprisoned or harmed.

**A.      Indefinite Detention (Ground One)**

In Ground One, Petitioner challenges the constitutionality of his detention pursuant to 8 U.S.C. § 1231, which takes effect once a final order of removal has been entered by an IJ.

The first ninety-day period following the entry of a final removal order is known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). To ensure a noncitizen's presence for removal and to protect the community from dangerous noncitizens who are awaiting removal, the INA mandates detention during the removal period. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the [DHS Secretary] **shall** detain the [noncitizen].") (emphasis added). Once a ninety-day removal period has expired, as occurred in this case, detention of unremoved noncitizens is no longer mandatory; instead, continued detention is committed to the discretion of the DHS Secretary. 8 U.S.C. § 1231(a)(6).

There is no textual limit on the DHS Secretary's discretion to detain certain noncitizens beyond the initial ninety-day removal period. However, in *Zadvydas*, the Supreme Court interpreted the INA to authorize the detention of noncitizens subject to removal orders only for a period "reasonably necessary to secure [their] removal." 533 U.S. at 699. By interpreting the INA in this way, the Supreme Court avoided a "serious constitutional threat" posed by granting the discretionary authority to order noncitizens detained for indefinite durations. *Id*.

Under *Zadvydas*, an order of detention during the first six months after entry of a final removal order is presumptively reasonable. *Id.* at 701. After the presumptively reasonable 180-day window has elapsed, courts apply a burden-shifting framework to determine whether a noncitizen's detention is of an indefinite duration in violation of the INA and due process. *Id.*

1    Within this framework, the noncitizen carries the initial burden of providing "good

2    reason to believe that there is no significant likelihood of removal in the reasonably foreseeable

3    future." *Id.* The "good reason to believe" standard "does not place a burden upon the detainee to

4    demonstrate [there is] no reasonably foreseeable, significant likelihood of removal or show that

5    his detention is indefinite; it is something less than that." *Senor v. Barr*, 401 F. Supp. 3d 420, 430

6    (W.D.N.Y. 2019) (cleaned up). If the noncitizen provides good reason, the burden then shifts to

7    the government to show removal remains likely within a reasonable timeframe. *Id*. If

8    the government fails to submit sufficient rebuttal evidence showing that removal is likely to

9    occur within the reasonably foreseeable future, then the noncitizen is entitled to habeas corpus

10    relief. *Id.*

11    Here, a final order of removal was issued against Petitioner on July 28, 2025, and there is

12    no real dispute that Petitioner's detention has now extended beyond the presumptively

13    reasonable period. Dkt. 5 at 7 (neither conceding nor disputing that the presumptively reasonable

14    period for Petitioner's detention has elapsed). Thus, the Court analyzes Petitioner's indefinite

15    detention claim under *Zadvydas*' burden-shifting framework wherein Petitioner bears the initial

16    burden of providing good reason to believe there is no significant likelihood of his removal in the

17    reasonably foreseeable future.

18    1.    Petitioner Provides Good Reason to Question the Likelihood of his Removal in

19    the Reasonably Foreseeable Future

20    Petitioner contends there is good reason to believe his removal will not occur within a

21    reasonable timeframe because there is no indication a travel document from Vietnam is

22    forthcoming. Dkt. 8 at 6; *see also* Dkt. 1. Petitioner argues that, on December 1, 2025, a request

23    for travel documents was sent to Consul General of Vietnam. Dkt. 8 at 6 (citing Dkt. 7-4). A

24    response from the Vietnamese Consulate was requested within 30 days and, as of the date of this

Order, more than 80 days have elapsed with no travel documents issued or record of other correspondence from the Consul General of Vietnam. *Id.*

Relying on *Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003), Respondents contend that Petitioner's detention does not violate due process because of his alleged lack of cooperation in the government's removal efforts. Dkt. 5 at 7. In *Pelich*, a noncitizen was shown to have frustrated his own removal by refusing to complete paperwork necessary for the issuance of his travel documents. 329 F.3d at 1060. The Ninth Circuit rejected the noncitizen's indefinite detention claim, reasoning that noncitizens cannot "convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future" when the impediment to removal is their own failure to cooperate. *Id.* at 1059–60.

Although Respondents are correct in arguing that, under *Pelich,* a noncitizen may not rely on delays of their own making when providing "good reason" to believe removal is unlikely, Respondents fail to support this argument with evidence showing that circumstances analogous to *Pelich* exist in this case.

Respondents contend that Petitioner has refused to cooperate with his removal since November 10, 2025, at which time Petitioner allegedly declined to sign a document and told an unidentified officer he would remain in the United States indefinitely. Dkt. 5 at 7; Dkt. 6 at ¶¶ 11, 12. But this timeline does not account for the preceding period where no progress was made towards Petitioner's removal even though his final order of removal was issued in July 2025. Dkt. 7-3. Additionally, Respondents do not explain how immigration officials were able to submit a completed travel-document request to the Consul General of Vietnam in December 2025 if Petitioner has refused to cooperate in this process. Dkt. 7-4. Conversely, if the December 2025 request was sent without all required documentation, Respondents do not identify what additional information remains outstanding that was not provided by Petitioner. In short, even if

1  the Court were to credit Respondents' evidence that Petitioner refused to sign documents and

2  verbally declared he would not assist in his removal, Respondents do not show what—if any—

3  effect the purported lack of cooperation by Petitioner has had on his removal.

4        Upon review, the Court finds this case is distinguishable from *Pelich* and that Petitioner

5  has provided good reason to believe that there is no significant likelihood of his removal to

6  Vietnam in the reasonably foreseeable future. *See, e.g.*, *Haidari v. Bondi*, No. 2:26-cv-00237-

7  JHC, 2026 WL 395683, at *2 (W.D. Wash. Feb. 12, 2026) (finding good reason to believe

8  removal was not foreseeable and granting habeas relief where, after nine months in immigration

9  detention, the country designated for removal had neither agreed to accept the petitioner nor

10 issued travel documents). Accordingly, the burden shifts to Respondents to rebut Petitioner's

11 showing with evidence.

12        2.    Respondents Fail to Show Petitioner's Removal is Likely to Occur in the

13 Reasonably Foreseeable Future

14        Respondents present no evidence regarding the likelihood of removal, arguing only that

15 "to the extent that Petitioner's removal has been delayed, this Court should recognize Petitioner's

16 refusal to cooperate with ICE's efforts until last month." Dkt. 5 at 7. As explained above,

17 however, Respondents have not supplied the Court with evidence demonstrating how and to

18 what extent Petitioner's alleged lack of cooperation has impeded his removal to Vietnam.

19        Moreover, the evidentiary record before the Court contains no information regarding the

20 typical process for obtaining travel documents from Vietnam, the status of Petitioner's case

21 within that process, or the estimated date by which that process will be complete. Furthermore,

22 Respondents submit no evidence showing that Vietnam has agreed to accept Petitioner for

23 removal. Faced with similarly deficient records, "[c]ourts in this circuit have regularly refused to

24 find Respondents' burden met where Respondents have offered little more than generalizations

regarding the likelihood that removal will occur." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) (collecting cases).

In sum, the Court concludes that Petitioner has satisfied his initial burden under *Zadvydas* by providing good reason to believe that his removal is not significantly likely to occur in the reasonably foreseeable future. The lack of travel documents from Vietnam and the absence of evidence regarding the status or expected timeline of travel document procurement support this showing. *See, e.g.*, *Kamyab v. Bondi*, No. 25-cv-389RSL, 2025 WL 2917522, at *4 (W.D. Wash. Oct. 14, 2025) (finding detention indefinite and granting habeas relief where "the Government has not made clear to the Court that it has submitted appropriate documentation [to effectuate removal].". Although Respondents allege that Petitioner has been uncooperative in facilitating his removal, they fail to demonstrate that any such conduct has meaningfully impeded the removal process. Because Respondents offer no individualized evidence establishing that removal is likely within a reasonable period of time, they have not rebutted Petitioner's showing. Accordingly, Petitioner's continued detention under 8 U.S.C. § 1231(a)(6) is no longer authorized by the INA as construed in *Zadvydas* and runs afoul of due process.

3.    Immediate Release from Detention is the Appropriate Relief for Ground One

Having determined that Petitioner's continued detention is no longer authorized, the Court must determine the proper scope of habeas relief. Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The Supreme Court in *Zadvydas* considered conditional release the appropriate remedy once detention exceeds the period reasonably necessary to effectuate removal. 533 U.S. at 699–700.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

Accordingly, the Court concludes that the appropriate relief for the unlawful detention alleged in Ground One is an order directing Respondents to release Petitioner from immigration detention under reasonable conditions of supervision.

**B.      Prolonged Detention (Ground Two)**

In Ground Two, Petitioner alleges his prolonged detention without a bond order violates the Due Process Clause. Dkt. 1 at 9. Because the injuries alleged in Ground Two are remedied by the Court's grant of immediate release on Ground One and because disposition of Ground Two's constitutional claim would not materially alter the outcome of this case, the Court declines to reach Petitioner's prolonged detention claim in Ground Two. *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (explaining that courts should avoid resolving a constitutional question "unless absolutely necessary to a decision of the case") (internal citations and quotations omitted).

**C.      Third-Country Removal (Grounds Three through Five)**

In his remaining Grounds, Petitioner challenges his removal to a country other than Vietnam under the government's current policy on third-country removal and invokes the Court's habeas and federal question jurisdiction to request injunctive relief. Dkt. 1; Dkt. 8. As these Grounds are not remedied by his immediate release from detention and the requested injunctive relief is within this Court's jurisdiction to grant, the Court addresses each Ground in turn. *See generally Schlup v. Delo*, 513 U.S. 298, 319 (1995) (habeas corpus relief is "at its core, an equitable remedy"); *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) ("[I]mmediate physical release [is not] the only remedy under the federal writ of habeas corpus.").

1       1.   <u>Prior Notice and an Opportunity to be Heard (Grounds Three and Four)</u>

2       In Grounds Three and Four, Petitioner alleges his removal to a country other than

3  Vietnam, if conducted without notice and an opportunity to be heard, would violate federal

4  immigration statutes and the Due Process Clause of the United States Constitution. Dkt. 1 at 10.

5       Respondents have not provided any substantive response to Petitioner's claims

6  concerning third-country removal, arguing only that these Grounds are based on speculative

7  injury and thus not ripe for adjudication. Dkt. 5 at 8. In particular, Respondents argue that there

8  is no evidence they intend to remove Petitioner to a country other than Vietnam. *Id.* However, as

9  another court in this District has observed:

10         The problem with Respondents' argument is that, without a requirement that ICE
           notify [petitioner] of its intent to remove him to a third country, [petitioner] could

11         be put on a plane without being told where he is going and would never have the
           chance to express a reasonable fear of persecution or torture or seek judicial

12         intervention. [Petitioner]'s fear of such a circumstance is not speculative, as such
           removals have been well documented by the courts and the press.

13 *Le v. Bondi*, No. 25-cv-2454-KKE, 2026 WL 309239, at *7 (W.D. Wash. Feb. 5, 2026).

14      In addition, Respondents do not dispute that Petitioner—as a noncitizen pending removal

15 from the United States—is subject to the government's current policies and practices for

16 removal.[1] *See Kumar v. Wamsley*, No. 25-cv-2055-KKE, 2025 WL 3204724, at *7 (W.D. Wash.

17 Nov. 17, 2025) ("Where alleged harm 'is directly traceable to a written policy …there is an

18 implicit likelihood of its repetition in the immediate future.'") (quoting *Bates v. United Parcel*

19 *Serv., Inc.*, 511 F.3d 974, 986 (9th Cir. 2007)). Because there is no dispute that Petitioner falls

20 within the purview of Respondents' third-country removal policy, the Court finds his claims

21

22

23      [1] Petitioner submitted evidence of the government's current policies and practices for third-
   country removal with his Traverse. Dkt. 8-2 (Guidance to ICE Employees on Third-Country

24 Removal dated July 9, 2025).

1    concerning the availability of notice and a hearing under that policy are nonspeculative and ripe

2    for adjudication at this time.

3           Where the government cannot remove a noncitizen to the country specified in their

4    removal order, it may attempt to remove that person to a third country, but in doing so, it must

5    comply both with the INA, 8 U.S.C. § 1231(b), and the Due Process Clause. *Aden v. Nielsen*,

6    409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); *Kumar*, 2025 WL 3204724, at *2 (explaining

7    such designations "are subject to the same mandatory protections that exist in removal

8    proceedings."). To comply with due process, the government must provide sufficient notice and

9    a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm

10   upon removal to a designated third country. *Id.*

11          Similarly, the INA prohibits the government from removing a noncitizen to any country

12   where their "life or freedom would be threatened . . . because of [their] race, religion, nationality,

13   membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To

14   comply with the INA, the government must "make a determination regarding a noncitizen's

15   claim of fear before deporting him." *Aden*, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A).

16   The noncitizen must also be notified that they may apply for asylum, withholding of removal, or

17   relief under the Convention Against Torture. *Aden*, 409 F. Supp. 3d at 1007 (citing 8 C.F.R. §

18   1240.11(c)(1) and *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005) (outlining

19   available remedies for noncitizens facing third-country removal)).

20          Multiple courts in this District have held that, if a noncitizen claims fear of removal to a

21   designated third country, the government must allow them to pursue withholding of removal

22   through reopened removal proceedings before an immigration judge. *Aden*, 409 F. Supp. 3d at

23   1011; *Baltodano v. Bondi*, 25-cv-1958RSL, 2025 WL 3484769, at *3–4 (W.D. Wash. Dec. 4,

24   2025); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 739 (W.D. Wash. 2025). Respondents offer no

reason why this Court should deviate from the decisions referenced above, and the Court perceives none.

Accordingly, to the extent Petitioner argues he is entitled to notice and an opportunity to be heard before he may be removed to a country other than Vietnam as a matter of constitutional and statutory law, the Court adopts the reasoning of other courts in this District and **GRANTS** Petitioner's claims in Grounds Three and Four.

As for the appropriate relief on those Grounds, this Court joins others in ordering injunctive relief requiring that Petitioner be given notice and an opportunity to be heard before he may be removed to a third country. *See e.g.*, *Kumar*, 2025 WL 3204724, at *9; *Baltodano*, 2025 WL 2987766, at *2; *Nguyen v. Bondi*, 2:25-cv-02024-TL, 2025 WL 3534168, at *7–10 (W.D. Wash. Dec. 10, 2025); *A.A.M. v. Andrews*, 1:25-cv-01514-DC-DMC (HC), 2025 WL 3685159, at *4–7 (E.D. Cal. Dec. 19, 2025). Should Respondents take steps to remove Petitioner to a country other than Vietnam, they must provide Petitioner with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3). *See, e.g., Nguyen,* 796 F. Supp. 3d at 727 (requiring that noncitizen be granted opportunity to challenge third-country removal in reopened removal proceedings).

### 2.    Punitive Third-Country Removal

Finally, in Ground Five, Petitioner alleges his removal to a third country where he is likely to be imprisoned or harmed constitutes unlawful punishment in violation of the United States Constitution. Dkt. 1 (citing *Wong Wing v. United States*, 163 U.S. 228, 237 (1896)).

Respondents again contend only that Petitioner's claim in this Ground should be denied because it is speculative and unripe. Dkt. 5 at 8. However, as with the notice-and-hearing claims addressed above, courts in this District have recently granted relief on similar claims, holding

that the government's third-country removal policy is punitive and therefore unconstitutional under *Wong Wing*. *See Baltodano*, 2025 WL 3484769, at *7–10; *Abubaka v. Bondi*, No. 25-cv-1889RSL, 2025 WL 3204369, at *7–8 (W.D. Wash. Nov. 17, 2025); *Nguyen*, 796 F. Supp. 3d at 733–35; *but see Somsanuk v. Bondi*, No. 26-cv-48-MLP, 2026 WL 221139, at *6 (W.D. Wash. Jan. 28, 2026) (denying injunction categorically prohibiting removal to "*any* third country," concluding such a claim was overbroad (emphasis added)).

These courts have taken judicial notice of "statements made by government officials, both on social media and to the press, acknowledging that deportees to third countries are being imprisoned and expressing intent to continue that practice[,]" and found that:

> [T]hese statements . . . do offer evidence that third country deportation is occurring as a punishment. *See, e.g.*, Dkt. 25 at 13 (official video of President Donald J. Trump stating "[I]f illegal aliens choose to remain in America, they're remaining illegally and they will face severe consequences. Illegal aliens who stay in America face punishments, including significant jail time, enormous financial penalties, confiscation of all property, garnishment of all wages, imprisonment and incarceration, and sudden deportation in a place and manner solely of our discretion."); *see also id.* (statement by President Donald J. Trump that immigrants would be detained at Guantanamo Bay prison because "it's a tough place to get out" and "we don't want them coming back.").

*Baltodano*, 2025 WL 3484769, at *8 (quoting *Nguyen*, 796 F. Supp. 3d at 733–34).[2] The court in *Nguyen* also noted that "[o]ther courts across the country have recognized that the government is intentionally removing individuals to countries where they will be imprisoned." *Nguyen*, 796 F. Supp. 3d at 734 (citations omitted).

The courts in *Baltodano* and in *Abubaka*, relying heavily on the *Nguyen* court's analysis, concluded that Respondents' "practice of third-country removal paired with imprisonment is

---

[2] As further evidence in this case, Petitioner submits additional news coverage of the government's third-country removal policy and its punitive outcomes. Dkt. 8-3 (Sarah Stillman, *Disappeared to a Foreign Prison,* THE NEW YORKER, Nov. 24, 2025).

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 14

intended to be punitive and thus violates due process under *Wong Wing* and *Zadvydas*." *Baltodano*, 2025 WL 3484769, at *10 (cleaned up); *Abubaka*, 2025 WL 3204369, at *8.

In line with this District's recent authority, this Court similarly concludes that Respondents' documented practice of third-country removals paired with imprisonment violates due process. Petitioner is therefore entitled to the requested order that Respondents not remove him to a third country where he is likely to face imprisonment or harm.

## IV.    CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

(1)    Petitioner's Petition for writ of habeas corpus (Dkt. 1) is **GRANTED IN PART** with respect to Grounds One, Three, Four, and Five. However, as disposition of the constitutional claim asserted therein would not materially alter the outcome of this case or the relief granted, the Court declines to reach Ground Two of the Petition;

(2)    Respondents **SHALL** immediately release Petitioner from custody on reasonable conditions of supervision;

(3)    Respondents **SHALL** file a declaration with the Court within **twenty-four hours** of this Order, confirming that Petitioner has been released from immigration detention and providing the date and time of his release;

(4)    Respondents **SHALL NOT** remove Petitioner to a country other than Vietnam without first providing him written notice and a meaningful opportunity to respond in a reopened removal proceeding before an immigration judge; and

(5)    Respondents **SHALL NOT** remove Petitioner to any third country where he is likely to face imprisonment or harm.

//

//

//

1    Finally, the Court will entertain any post-judgment motion for attorney's fees as

2  requested in the Petition.

3

4    Dated this 26th day of February, 2026.

5

6    _____

7    Grady J. Leupold
     United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 16